IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PMW REAL ESTATE MANAGEMENT, LLC**, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) 2:11cv1395 ) **Electronic Filing** |
| **STATE FARM FIRE AND CASUALTY COMPANY**, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

August 5, 2013

**I.   INTRODUCTION**

Plaintiff, PMW Real Estate Management, LLC ("PMW" or "Plaintiff"), filed a three (3) count Amended Complaint alleging Breach of Contract and Bad Faith, as well as seeking Declaratory Judgment, with regard to coverage under an insurance policy issued by Defendant, State Farm Fire and Casualty Company ("State Farm" or "Defendant").  The parties have filed cross-motions for summary judgment, and the motions are now before the Court.

**II.   STATEMENT OF THE CASE**

In 2000, PMW[1] purchased a six (6) unit apartment building located at 565 Forest Avenue in Bellevue, Pennsylvania (the "Property"). State Farm Concise Statement of Undisputed Material Facts ("State Farm SMF") ¶ 4; PMW Statement of Facts ("PMW SF") ¶ 1.  PMW made application to State Farm for insurance to cover the Property in 2002. PMW SF ¶ 4; State Farm SMF ¶ 9.  State Farm sent a representative to inspect the Property prior to issuing a policy of

---

[1]   PMW is a limited liability company formed by Scott Purcell, Dan Molinaro, and Shawn Purcell.  PMW SF ¶ 2.

insurance. PMW SF ¶ 5. On or about July 31, 2002, State Farm began insuring the Property under Apartment Policy No. 98-LT-8148-0 (the "Policy"). PMW SF ¶ 7; State Farm SMF ¶ 9.

The Policy contains the following relevant provisions:

> **Section I – Property Coverages**
>
> **Coverage A – Buildings**
>
> When a limit of insurance is shown in the Declarations for Coverage A, we will pay for accidental direct physical loss to buildings at the premises described in the Declarations caused by an insured loss . . .

*See* PMW Apndx. Ex. 2, p. 2.

> **Losses Not Insured**
>
> 1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss:
>
>    d. water, such as:
>
>        (4) natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through:
>
>            (a) foundations, walls, floors or paved surfaces;
>
>            (b) basements, whether paved or not; or
>
>            (c) doors, windows or other openings.

*See* PMW Apndx. Ex. 2, pp. 6-7.

> 2. We do not insure for loss either consisting of, or directly and immediately caused by, one or more of the following:
>
>    f. settling, cracking, shrinking, bulging or expansion.
>
>    p. collapse, except as provided in the Extensions of Coverage.

*See* PMW Apndx. Ex. 2, pp. 7-8.

> 3. We do not insure under any coverage for any loss consisting one or more of the items below. Further, we do not insure for loss described in Paragraphs 1

2

and 2 immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

    b. faulty, inadequate, unsound or defective:

        (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        (3) materials used in repair, construction, renovation or remodeling; or

        (4) maintenance;

    Of part or all of any property (including land, structures, or improvements of any kind) on or off the described premises.

*See* PMW Apndx. Ex. 2, pp. 8-9.

**Extensions of Coverage**

4. Collapse

    a. We will pay for any accidental direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

        (1) any of the "Specified Causes of Loss[2]" or breakage of building glass, only as insured against in this policy;

        (2) hidden decay;

*See* PMW Apndx. Ex. 2, p. 10.

On August 3, 2011, a portion of the rear foundation wall of the Property collapsed. PMW SF ¶ 17; State Farm SMF ¶ 11. PMW reported the incident to State Farm, and on the afternoon

---

[2] Under the Policy, "Specified Causes of Loss" refers to all of the following causes "fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage." Water damage means "accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam." *See* PMW Apndx. Ex. 2, p. 1.

3

of August 4, 2011, a State Farm claim adjuster inspected the Property. State Farm SMF ¶¶ 12, 13 & 14. State Farm retained Kevin Young of Insurance Consulting Specialists, who conducted an inspection of the Property on August 4, 2011. State Farm SMF ¶ 20. Young opined that:

> The collapse occurred as a result of undermining of the foundation by ground water and surface water over an extended period of time. A contributing factor to the surface water is the plastic drain line that ended at the right rear corner . . . An additional contributing factor is the slope of the ground on the right elevation . . . Deterioration of the foundation wall and lateral pressures from the soil and building could have been contributing factors.

State Farm SMF ¶ 32.

State Farm also retained Owen Beachy ("Beachy"), a structural engineer with the EADS Group, to investigate the collapse of the property. State Farm SMF ¶ 22. Beachy visited the site on August 5, 2011, and submitted his report on August 9, 2011. State Farm Apndx, Ex. H, p. 1. In his report, Beachy opined:

> . . . the wall collapse was the result of the long-term degradation of the wall. Numerous signs of pre-existing structural distress were observed along the perimeter of the basement walls. The extent of cracking and lateral displacement of the wall would have had an adverse impact on the strength and stability of the wall to safely support the five (5) story building. Furthermore, the composition of the wall and site characteristics would have made the wall more prone to water related damage or the effects of freeze-thaw action. . . . [T]he prior occupancy or use of the building, unusual weather conditions, or the potential for overloading likely did not contribute to the wall collapse. It is believed that the wall collapse was triggered by a localized failure and progressive collapse that was the result of neglected maintenance and substandard construction.

State Farm Apndx, Ex. F, p. 4.

PMW also retained an expert, the Gateway Engineers, Inc. ("Gateway"), to render an opinion on the cause of the partial collapse that occurred at the Property. PMW Apndx. Ex. 14, p. 2. Gateway personnel visited the site of the collapse on August 9, November 2, December 10,

15 and 19 all of 2011, and on May 12, 2012. PMW Apndx. Ex. 14, p. 3. Daniel S. Deiseroth, P.E. ("Deiseroth"), who prepared the "Expert Opinion Report[3]" that was submitted on behalf of Gateway, visited the site on December 11 and 15 of 2011 and on May 10, 2012, and was fully briefed in all the other Gateway visits. *Id.*

In his report, Deiseroth opined:

> . . . [I]t is my professional opinion within a reasonable degree of engineering certainty, that the failure of the right rear corner of the stone rubble basement walls at 565 Forest Avenue on August 2, 2011 was caused by deterioration of the mortar within and around the courses and interior joints of the stone rubble from which it was constructed. It is further my opinion that, since the exterior and interior faces of this wall were covered mortar and could not be removed in areas immediately adjacent to the collapse, this mortar deterioration constituted hidden decay. This is substantiated by the condition of the wall, which would not have indicated, from an inspection, that such collapse would or should have occurred.

PMW Apndx. Ex. 14, p. 4.

By letter dated September 21, 2011, State Farm denied coverage for the collapse concluding that the collapse "was due to long term issues involving surface and subsurface water infiltration, settlement, and pre-existing structural distress, in addition to long-term freeze thaw cycles." PMW SF ¶ 23. In response, PMW initiated this lawsuit.

### III.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in

---

[3]  Though Gateway was retained in early August of 2011, the report was prepared on or about July 5, 2012.

dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

The fact that the parties have filed cross-motions for summary judgment "does not mean that the case will necessarily be resolved at the summary judgment stage," because "[e]ach party

must still establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Atl. Used Auto Parts v. City of Philadelphia*, 957 F. Supp. 622, 626 (E.D. Pa. 1997). With particular relevance to the instant matter, when evaluating a motion for summary judgment, the court "is not to weigh the evidence or make credibility determinations." *Petruzzi's IGA Supermarkets, Inc. v. Darling—Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. at 255.

IV.  DISCUSSION

   A.  Hidden Decay

PMW contends it is entitled to summary judgment because the collapse that occurred at the Property is an "insured loss" pursuant to the "Extensions of Coverage" provision of the Policy which covers a collapse of any part of a building caused by hidden decay.  In its motion for summary judgment, State Farm argues that PMW is unable to establish that the decay of the wall at the Property was "hidden" as required by the applicable Policy language for a collapse to be a covered loss.

The parties agree that Pennsylvania law governs the interpretation and construction of the Policy.  In Pennsylvania, to state a cause of action for breach of contract, PMW must establish that: (1) a valid contract exists; (2) State Farm breached a duty imposed by the contract; and (3) that damages resulted. *See Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999). There is no dispute in this instance regarding the existence of a contract of insurance or, that if coverage exists, PMW suffered a loss.  State Farm disputes, however, that a breach of the contract of insurance occurred.

7

Pennsylvania's rules of insurance contract interpretation are well established. *401 Fourth Street, Inc. v. Investors Insurance Group*, 879 A.2d 166, 171 (Pa. 2005). Interpretation of an insurance contract is generally a task to be performed by the court rather than a jury. *Id.*, *see also General Accident Ins. Co. of America v. Allen*, 692 A.2d 1089, 1093 (Pa. 1997) ("The task of interpreting a contract of insurance is generally performed by the court."). In contrast, however, "a question of interpretation of an integrated agreement is to be determined by a trier of fact if it depends on the credibility of extrinsic evidence or on a choice of reasonable inferences to be drawn from extrinsic evidence." *Id.* (citing RESTATEMENT (SECOND) OF CONTRACTS § 238(a)); *see also Ram Construction Co., Inc., v. American States Ins. Co.*, 749 F.2d 1049, 1052 (3d Cir. 1984)). In construing the contract, the goal is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 469 A.2d 563, 566 (Pa. 1983). A court should read an insurance policy as a whole and construe it according to the plain and ordinary meaning of its terms. *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).

If certain terms of the policy are ambiguous, the policy terms must be construed in favor of the insured and against the insurer, however, if the language of the contract is clear and unambiguous, a court is required to give effect to that language. *Minnesota Fire and Casualty Co., v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004) (citing *Gene & Harvey Builders, Inc. v. Pennsylvania Manufacturers' Association Insurance Company*, 517 A.2d 910, 913 (Pa. 1986)). Courts interpret coverage clauses broadly "to afford the greatest possible protection to the insured," and, accordingly, courts interpret exceptions to an insurer's general liability narrowly against the insurer. *Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 498 n.7 (3d Cir. 2002) (quoting *Eichelberger v. Warner*, 434 A.2d 747, 750 (Pa. Super. 1981)).

In insurance coverage disputes "an insured bears the initial burden to make a *prima facie* showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage ." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. Pa. 2009). In order to establish coverage, PMW must demonstrate that the collapse is covered under the Extension of Coverage provision of the Policy. PMW must produce evidence that the collapse can be attributed to one of the enumerated causes eliciting coverage under the specific terms of the contract. PMW contends that coverage would issue from the "hidden decay" provision under "collapse."

The term "hidden decay" is not specifically defined in the Policy. In such a case, "[w]ords of 'common usage' in an insurance policy are to be construed in their natural, plain, and ordinary sense, and a court may inform its understanding of these terms by considering their dictionary definitions." *Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 962 (Pa. Super. 2007). Courts construing the term "hidden decay" have interpreted it to mean decay that is "not visible," "out of sight or off the beaten track; concealed," "out of sight," or "concealed." *See S.R.P. Mgmt. Corp. v. Seneca Ins. Co.*, 2008 U.S. Dist. LEXIS 38651, 22-23 (E.D. Pa. May 13, 2008)(collecting cases); *see also Wurst v. State Farm Fire & Cas. Co.,* 431 F. Supp. 2d 501, 505 n. 7 (D.N.J. 2006). Moreover, "decay" means "decomposition," "a process of wasting away," "a decline in quality." THE OXFORD DICTIONARY AND THESAURUS (American ed. 1996). Decay has also been defined as "[w]asting or wearing away, disintegration, dilapidation, ruinous condition." *Norfolk & Dedham Mut. Fire Ins. Co. v. DeMarta*, 799 F. Supp. 33, 35 (F.D. Pa. 1992) (quoting IV OXFORD ENGLISH DICTIONARY, 332 (Clarendon Press, 2d Ed. 1989)). PMW, therefore, must prove that the collapse was caused by the decomposition, disintegration or decline in quality of

the wall and that such decay was concealed or not visible. *S.R.P. Mgmt. Corp. v. Seneca Ins. Co.*, 2008 U.S. Dist. LEXIS 38651 at 23.

In this instance, the Court finds sufficient evidence in the record that PMW has met its burden to show that the collapse was caused by "decay" of the rear foundation wall. PMW's expert determined that the collapse of the rear corner wall of the Property "was caused by deterioration of the mortar within and around the courses and interior joints of the [wall]." Specifically, Deiseroth found that:

> [T]he double stone rubble right wall clearly delineates extensive age-related decay of the mortar binding the rubble and voids in the interior" pore spaces" of the stone rubble.
>
> The mortar along the wall still standing immediately adjacent to the collapse could not be removed by hand showing that it still had horizontal tensile bond strength giving the indication that it was still stable, but the mortar from the interior cell was able to be pulled with bare hands and the mortar crumbled when squeezed in bare hands demonstrating its extremely low compressive bond strength. The fact that the external mortar could not be pulled apart by hand vertically indicates the outer layer has the normal expected tensile bond strength of 180 psi, but the crumbling of the mortar from the interior cell indicates the mortar did not even bond with itself. The samples were taken at an elevation approximately 5 feet above the ground surface so the intrusion of any groundwater was not a factor and yet interior mortar was still decayed.

PMW Apndx. Ex. 14, p. 4.

State Farm's expert, Owen Beachy, also opined that "the wall collapse was the result of the long-term degradation of the wall." State Farm Apndx, Ex. F, p. 4. Beachy also noted that he observed signs of "pre-existing structural distress" along the exterior of the perimeter walls, including cracking and lateral displacement. *Id.* Beachy further stated:

> Since the basement walls are constructed using mortared stone and numerous cracks were observed on the exterior surface of the wall, there is a high likelihood that water penetration into the core of the wall caused enough damage to trigger collapse. Over a long period

> of time, the wall was likely subjected to freeze-thaw action. When water is not prevented or properly controlled from entering the wall structure, the cyclic freezing and thawing will cause internal damage.

*Id.* Such factors, however, are further evidence that the wall was deteriorating, decomposing and/or in a state of decay. Moreover, there is no evidence that the infiltration of water or the settling or cracking of the exterior walls was the actual cause of the collapse.

This Court must interpret the coverage clause regarding "collapse" broadly "to afford the greatest possible protection to the insured." Therefore, whether settling, cracking and/or water infiltration caused the degradation or decaying of the wall is irrelevant. The determinative factor is whether the collapse resulted from deteriorating condition of the rear wall. Both experts agree that it did[4]. Further, the general exclusions listed in Section I of the Policy titled "Losses Not Insured," including losses caused by water, settling, cracking, shrinking, bulging or expansion, do not modify or qualify the additional collapse coverage found under Extensions of Coverage. *See Young Sook Pak v. Alea London Ltd.*, 2009 U.S. Dist. LEXIS 65640, 22 (M.D. Pa. July 30, 2009) (collapse in accordance with additional collapse coverage is a covered event notwithstanding general policy exclusion provision); *130 Slade Condo. Ass'n, Inc. v. Millers Capital Ins. Co.*, 2008 U.S. Dist. LEXIS 44182, 16-17 (D. Md. June 2, 2008) (similar policy language indicates that additional collapse coverage is "not modified or qualified by any of the other listed exclusions that apply instead to the general coverage provisions"). Therefore, even if

---

[4] Though Beachy also states: "[i]t is **believed** that the wall collapse was triggered by a localized failure and progressive collapse that was the result of neglected maintenance and substandard construction," he does not so state any "degree of engineering certainty." Moreover, Beachy admitted that it was "impossible to offer a definitive conclusion as to the cause of the collapse." State Farm Apndx, Ex. F, p. 3-4.

11

the deterioration or decay of the wall was caused by water, settling, cracking, shrinking, bulging or expansion, if the collapse was a result of such decay, the Court must find coverage if the decay was "hidden."[5]

It is not enough for PMW to simply assert that it was unaware of the decay. *See S.R.P. Mgmt. Corp. v. Seneca Ins. Co.*, 2008 U.S. Dist. LEXIS 38651, at *23. The Court must employ the objective standard of whether a reasonable insured under such circumstances would have seen or otherwise been aware of the decay. *Id.* "While an insured need not affirmatively inspect the insured premises so as to uncover otherwise hidden decay and repair it before it worsens, he likewise cannot retreat to willful blindness or refusal to draw those conclusions a reasonable insured would draw from visible signs of deterioration or decay." *Id.* (citations omitted).

Therefore, prior to the collapse, the presence of visible evidence of the specific decay that caused the collapse or the visible symptoms of such decay will be sufficient to establish that a reasonable insured knew or should have known of the decay. *See Wurst v. State Farm Fire & Cas. Co.,* 431 F. Supp. 2d at 505. However, where "there is generally no effective way for [the insured] to determine the existence of decay," then the insured cannot reasonably be expected to have known of the decay prior to the collapse. *S.R.P. Mgmt. Corp. v. Seneca Ins. Co.*, 2008 U.S. Dist. LEXIS 38651, at *23.

In this instance, the Court finds a genuine issue of material fact concerning whether the decay or deterioration of the wall was "hidden." The report of PMW's expert supports the conclusion that the deterioration was concealed as the exterior and interior faces of the failed wall were covered with mortar that exhibited no outward evidence of decay. PMW Apndx. Ex.

---

[5] The Court agrees, therefore, that State Farm's "Fourth Affirmative Defense: Water Exclusion" and "Fifth Affirmative Defense: Settling, Cracking, Bulging Exclusion" must be rejected.

14, p. 4. Further, Deiseroth found that no water infiltration to the foundation was either "present or indicated," and a one foot diameter test hole dug adjacent to the failed wall showed no evidence of standing water. *Id.*

Beachy contends that there was evidence of structural deficiencies, including cracking and lateral displacement, o the exterior perimeter walls of the Property. Beachy also stated that these structural deficiencies were obvious signs of degradation and a person of good common sense would be able to identify that such structural defects required professional examination or investigation. *See generally* State Farm Apndx, Ex. F; State Farm Apndx, Ex. B (Beachy Deposition) p. 143. Cracking and lateral displacement are not in and of themselves evidence of decay. Such observations may be physical manifestations of the degradation of the wall, however, they may also be evidence of any number of issues including past settlement or construction issues. In this instance, however, the Court must draw all justifiable inferences in favor of State Farm, and therefore, finds that Beachy's deposition, as well as his expert report, create a genuine issue of material fact regarding whether the decay or deterioration of the wall was hidden. *See e.g. Wurst v. State Farm Fire & Cas. Co.*, 431 F. Supp. 2d at 505 (finding that the decay of mortar bond in a basement wall was not hidden where the wall exhibited visible evidence of cracking and the presence of salt deposits visibly evidenced water intrusion).

Accordingly the motions for summary judgment with regard to PMW's breach of contract claim will be denied.

    B.    <u>Bad Faith</u>

State Farm also requests summary judgment on PMW's bad faith claim. Pennsylvania law provides a remedy when an insurer has acted in bad faith toward the insured. *See* 42 P<small>A</small>. C<small>ONS</small>. S<small>TAT</small>. A<small>NN</small>. § 8371. To prevail on a bad faith claim, PMW must demonstrate by clear and convincing evidence that (1) State Farm did not have a reasonable basis for denying

coverage under the policy; and (2) that State farm knew or recklessly disregarded its lack of reasonable basis in denying the claim. *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994); *see also Klinger v. State Farm Auto Ins. Co.*, 115 F.3d 230, 233-234 (3d Cir. 1997)(clarifying that the test set forth in *Terletsky* does not require any motive of self-interest or ill will, but instead requires plaintiffs to demonstrate only that the insurer had no reasonable basis for denying claims under the policy and knew or recklessly disregarded its lack of reasonable basis for denying the claim).

In support of its bad faith claim, PMW contends that State Farm was predisposed to deny its claim, and that State Farm failed to conduct a meaningful investigation of the claim. Viewing the facts, and making all reasonable inferences in favor of PMW, the Court finds that a reasonable jury could decide that State Farm acted in bad faith.

On the afternoon of August 4, 2011, Jonathan Forgrave ("Forgrave"), State Farm's claim adjuster, arrived at the Property for an inspection. Forgrave met PMW's Dan Molinaro at the site, and before Forgrave even observed the area of collapse, he told Molinaro "this won't be covered." PMW Apndx. Ex. 4, pp. 11-12. Further, Beachy's deposition testimony is inconsistent with some of the conclusions set forth in his report to State Farm. His testimony may also allow the jury to determine that Beachy did not spend enough time at the site, and his reliance on his observations from the exterior of the building were not adequate to prepare a reliable, comprehensive report upon which State Farm could reasonably rely. *See* PMW Apndx. Ex. 15 pp. 92-98, 100-101, 103-104, 108-110, 113-116. State Farm's request for summary judgment on PMW's bad faith claim will be denied.

    C.    <u>Security Fees and Fencing/Protection</u>

State Farm contends that PMW's claim for damages for security fees ($15,000) and for "fence/protection costs" ($995) are not covered under the Policy. Because PMW does not argue otherwise, summary judgment in favor of State Farm will be entered on such damage claims.

V.    **CONCLUSION**

Based on the foregoing, the cross-motions for summary judgment filed by the parties shall be granted in part and denied in part. An appropriate Order follows.

                          Cercone, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PMW REAL ESTATE MANAGEMENT, LLC**, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) 2:11cv1395 ) **Electronic Filing** |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | ) ) ) |
| Defendant. | ) |

### ORDER OF COURT

AND NOW, this __ day of August, 2013, upon consideration the Motion for Summary Judgment (**Document No. 27**) filed on behalf of Plaintiff, PMW Real Estate Management, LLC, and the Motion for Summary Judgment (**Document No. 31**) filed on behalf of Defendant, State Farm Fire and Casualty Company, the responses thereto, the briefs and appendices filed in support thereof, pursuant to this Court's Memorandum Opinion filed herewith,

IT IS HEREBY ORDERED that the motions for summary judgment are granted in part and denied in part. PMW's motion is **GRANTED** with regard to State Farm's Fourth Affirmative Defense and Fifth Affirmative Defense, and the motion is **DENIED** in all other aspects. State Farm's motion is **GRANTED** with regard to PMW's claim for damages for security fees and for fence/protection costs, and **DENIED** in all other aspects.

                 s/ David Stewart Cercone
                 David Stewart Cercone
                 United States District Judge

cc: Frank G. Salpietro, Esquire
   Daniel L. Rivetti, Esquire
   Mark A. Martini, Esquire

   (*Via CM/ECF Electronic Mail*)